IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG

DEBRA G. PARKER,

      Plaintiff,

v.                        CASE NO. 6:07-cv-00472

MICHAEL J. ASTRUE,
Commissioner of Social Security[1],

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are Plaintiff's Memorandum in Support of Motion for Judgment on the Pleadings and Defendant's Brief in Support of Judgement on the

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

Pleadings.[2]

Plaintiff, Debra G. Parker (hereinafter referred to as "Claimant"), protectively filed an application for SSI on August 17, 2004, alleging disability as of June 1, 2004, due to depression and anxiety and a left leg injury. (Tr. at 44-47, 56.) The claim was denied initially and upon reconsideration. (Tr. at 32-36, 38-40.) On August 19, 2005, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 41.) The hearing was held on June 20, 2006, before the Honorable Theodore Burock. (Tr. at 313-34.) By decision dated September 22, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 15-24.) The ALJ's decision became the final decision of the Commissioner on June 7, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 6.) On August 2, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically

_____

[2] The court notes that Plaintiff did not file a motion for judgment on the pleadings. In any event, pursuant to Local Rule of Civil Procedure 9.4(a), Plaintiff should file "a brief in support of the complaint," while Defendant files "a brief in support of the defendant's decision." Local Rules of the United States District Court for the Southern District of West Virginia, Local Rule of Civil Procedure 9.4(a).

determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental

capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2006).   The Commissioner must show two things:  (1)  that  the  claimant,  considering  claimant's  age, education, work experience, skills and physical shortcomings, has the  capacity  to  perform  an  alternative  job,  and  (2)  that  this specific  job  exists  in  the  national  economy.   McLamore  v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In  this  particular  case,  the  ALJ  determined  that  Claimant satisfied  the  first  inquiry  because  she  has  not  engaged  in substantial gainful activity since the alleged onset date.  (Tr. at 17.)  Under the second inquiry, the ALJ found that Claimant suffers from  the  severe  impairments  of  depression,  anxiety  disorder, chronic obstructive pulmonary disease and thyroid condition.  (Tr. at  17.)   At  the  third  inquiry,  the  ALJ  concluded  that  Claimant's impairments  do  not  meet  or  equal  the  level  of  severity  of  any listing in Appendix 1.  (Tr. at 18-19.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations.  (Tr. at 19.)  Claimant has no past relevant work.  (Tr. at 23.)  The ALJ concluded that Claimant could perform jobs such as garment sorter, retail pricer and bagger of hosiery,  which  exist  in  significant  numbers  in  the  national economy.  (Tr. at 24.)  On this basis, benefits were denied.  (Tr. at 24.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was forty-five years old at the time of the administrative hearing. (Tr. at 317.) Claimant completed the ninth grade and obtained her GED. (Tr. at 319.) Claimant worked

5

some in the past, but none of her work qualified as past relevant work.  (Tr. at 331.)

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

Prior to her alleged onset in June of 2004, Claimant was hospitalized in October of 1986 for depressive reaction following a break up with her boyfriend of eight years.  She left the hospital against medical advice. (Tr. at 123-24.)  Claimant was hospitalized again at St. Joseph's in November of 1986, and was diagnosed with depression and mixed personality disorder with schizoid and passive dependent features.  Claimant was discharged after approximately two weeks.  (Tr. at 135-36.)

Claimant was involuntarily committed at Chestnut Ridge Hospital from August 1 through 9, 2004.  Claimant had gone off her medication, including Zoloft and Seroquel, because she could not afford it. She was diagnosed with alcohol dependence, nicotine dependence, marijuana dependence, agoraphobia, major depressive disorder, recurrent and obsessive compulsive disorder on Axis I. There was no Axis II diagnosis.  Claimant's GAF on admission was 41, while her GAF on discharge was 62.  (Tr. at 149-50.)

On January 5, 2005, Stephen Nutter, M.D. examined Claimant at the request of the State disability determination service.  Dr. Nutter's impression was chest pain, shortness of breath and neck

6

pain.   He opined that Claimant's chest pain probably did not represent anginal chest pains.   In addition, he noted that while Claimant complained of shortness of breath with wheezes and coarse breath sounds, there was no cyanosis or dyspnea.   In addition, he noted that pulmonary function tests were negative.   (Tr. at 213.) Claimant had some pain and tenderness of the neck and back and a small amount of decreased range of motion in the neck, but there was no definite evidence of nerve root compression.   The deep tendon reflexes were brisk and the sensory and motor modalities were well preserved.   There appeared to be no evidence of weakness or nerve root compression.   There was no evidence of upper motor neuron lesion.   Grip strength and fine manipulation were well preserved bilaterally.   (Tr. at 212-13.)

A State agency medical source completed a Physical Residual Functional Capacity Assessment on January 27, 2005, and opined that Claimant could perform light work, with an occasional ability to climb, balance, stoop, kneel, crouch and crawl and a need to avoid concentrated exposure to extreme cold, heat, fumes, odors, dusts, gases, poor ventilation and hazards.   (Tr. at 219-26.)  The opinion was affirmed by a second source on August 2, 2005.   (Tr. at 226.)

On November 30, 2004, a State agency medical source completed a Mental Residual Functional Capacity Assessment and opined that Claimant was moderately limited in the ability to remember locations and work-like procedures, understand, remember and carry

out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and respond appropriately to changes in the work setting. (Tr. at 229-31.)  The source opined that Claimant's "residual mental capacity is consistent with routine competitive employment involving short and simple instructions." (Tr. at 231.)  The opinion was affirmed by a second source on August 20, 2005.  (Tr. at 231.)

On November 30, 2004, the same State agency medical source completed a Psychiatric Review Technique form on which he opined that Claimant had a moderate restriction in activities of daily living, mild difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence and pace and no episodes of decompensation, each of extended duration.  (Tr. at 234-44.)  The opinion was affirmed by the same second source on August 2, 2005.  (Tr. at 234.)

The record includes treatment notes from Belpre Medical Clinic dated October 18, 2004, through October 17, 2005.  On August 31, 2005, Carl P. Zelinka, D.O. completed a West Virginia Department of Health and Human Resources, General Physical (Adults) form on which he stated that Claimant's diagnoses included manic depression,

8

bipolar disorder and post traumatic stress disorder.  He opined that Claimant was unable to perform full time work.  (Tr. at 250.)

On October 18, 2005, John R. Atkinson, Jr., M.A. examined Claimant at the request of Claimant's counsel.  Mr. Atkinson diagnosed schizoaffective disorder, depressed type with paranoid features and generalized anxiety disorder with agoraphobic and social phobic features on Axis I and obsessive personality traits on Axis II.  He rated Claimant's GAF at 45.  (Tr. at 267.)

Mr. Atkinson completed a Mental Assessment of Ability to do Work-Related Activities (Mental) on which he rated Claimant's abilities as moderate to marked in most categories.  (Tr. at 270-72.)

Following the administrative hearing, Claimant submitted evidence from St. John's hospital, including an admission record dated August 1, 2004, when Claimant reported that she felt suicidal.  (Tr. at 275.)  It was following this initial visit that Claimant was committed to Chestnut Ridge, as noted above.

Following the administrative hearing, Claimant also submitted treatment notes from Joseph P. Norris, M.D. dated December 13, 2005, through May 4, 2006.  (Tr. at 288-92.)  On December 13, 2005, Claimant was having problems with mood swings and euphoria and was depressed, but not severely.  Elavil helped Claimant fall asleep. Claimant reported that many of her depressive symptoms occurred around the time of her menstrual cycle.  Dr. Norris noted that

9

"[b]etween those times she functions reasonably well." (Tr. at 292.) On examination, Claimant's speech was normal, and her associations were tight. Her affect was appropriate to thought content. Her memory and fund of information were intact. Dr. Norris increased Claimant's Lamictal and continued Claimant on Zoloft. He recommended counseling because Claimant "is having empty nest syndrome." (Tr. at 292.) On January 11, 2006, Claimant reported sleepiness on the Lamictal. Claimant's mood swings were better, and she still had some depression. On examination, there was some problem with depression in her affect, but the examination was otherwise largely unchanged. Dr. Norris instructed Claimant to stop taking the Lamictal, and instead prescribed Trileptal. (Tr. at 291.) On March 9, 2006, Dr. Norris noted that Claimant was "doing reasonably well with her depression. Elavil helps her sleep." (Tr. at 290.) Claimant had been treated for a hypothyroid condition. Claimant reported problems with irritability. Claimant was oriented times three, and her memory and fund of information were intact. Dr. Norris noted no depression. Dr. Norris concluded that while Claimant had a "little bit of [a] problem with mood swings, ... it is not [so] significant that we need to do something about it at this time." (Tr. at 290.) Dr. Norris continued Claimant on Trileptal, Zoloft and Elavil. (Tr. at 290.)

After the hearing, Claimant also submitted additional treatment notes from Belpre Medical Clinic dated October 17, 2005,

through July 12, 2006.  (Tr. at 293-307.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ's decision does not contain a complete analysis of Claimant's severe impairments; (2) the ALJ failed to properly weigh the opinions of treating and examining physicians; (3) the ALJ failed to properly consider Claimant's subjective complaints; and (4) the ALJ erred in his duty to develop the record.  (Pl.'s Br. at 3-14.)

The Commissioner argues that (1) the ALJ fully considered the severity of Claimant's impairments; and (2) the ALJ accorded appropriate weight to the medical opinions of record.  (Def.'s Br. at 8-18.)

Claimant first argues that the ALJ's decision does not contain a complete analysis of all of Claimant's severe impairments. Claimant seems to suggest that the ALJ erred in failing to find severe, her neck pain and headaches.  Claimant mentions a myriad of other impairments and complaints, but her argument as to why these impairments are severe is difficult to follow.  (Pl.'s Br. at 5-9.)

In his decision, the ALJ concluded that Claimant's severe impairments included depression, anxiety disorder, chronic obstructive pulmonary disease and thyroid condition.  (Tr. at 17.) The ALJ also explained that he concluded Claimant's neck pain, headaches, back pain and alcohol abuse were not severe impairments.

The ALJ noted that there are no objective findings to support Claimant's allegations of limitations related to these alleged impairments. (Tr. at 18.)

The court proposes that the presiding District Judge find that the ALJ's determination that the above impairments are severe is supported by substantial evidence, as is his finding that Claimant's headaches, neck pain, back pain and alcohol abuse are not severe impairments. As the ALJ noted in his decision, "there are no x-ray or MRI reports revealing any objective findings of a cervical or lumbar condition. In fact, the record includes only the claimant's subjective complaints of pain." (Tr. at 18.) Notably, Dr. Nutter indicated Claimant had some decreased range of motion in her neck, but range of motion in her lumbosacral spine was normal. (Tr. at 213.) In addition, Dr. Nutter found no evidence of nerve root compression or other positive neurological findings. (Tr. at 213.) While Dr. Nutter's report and the treatment notes from Belpre Medical Clinic mention Claimant's subjective complaints of headaches, there is no indication that this or the other nonsevere conditions "significantly limited" Claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c) (2006).

Claimant next argues that the ALJ erred in weighing the medical evidence of record from treating and examining medical sources. Claimant asserts that the State agency sources, upon whom

the ALJ relied, did not have the benefit of evidence submitted
after the administrative hearing. Claimant notes the sources did
not have Exhibits 11F (St. Joseph's), 12F (Dr. Norris) and 13F
(Belpre Medical Clinic) (Tr. at 274-307). (Pl.'s Br. at 7-8.)   In
addition, Claimant argues that the ALJ should have called a medical
expert to testify at the administrative hearing or contacted
Claimant's treating physicians for clarification regarding their
opinions.  (Pl.'s Br. at 7.)

Every medical opinion received by the ALJ must be considered
in accordance with the factors set forth in 20 C.F.R. § 416.927(d)
(2006).  These factors include: (1) length of the treatment
relationship and frequency of evaluation, (2) nature and extent of
the treatment relationship, (3) supportability, (4) consistency (5)
specialization, and (6) various other factors.  Additionally, the
regulations state that the Commissioner "will always give good
reasons in our notice of determination or decision for the weight
we give your treating source's opinion."  Id. § 416.927(d)(2).

Under § 416.927(d)(1), more weight is given to an examiner
than to a non-examiner.  Section 416.927(d)(2) provides that more
weight will be given to treating sources than to examining sources
(and, of course, than to non-examining sources).  Section
416.927(d)(2)(i) states that the longer a treating source treats a
claimant, the more weight the source's opinion will be given.
Under § 416.927(d)(2)(ii), the more knowledge a treating source has

about a claimant's impairment, the more weight will be given to the source's opinion.  Sections 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

In his decision, the ALJ explained the weight afforded the evidence of record from Mr. Atkinson.  The ALJ explained that Mr. Atkinson based his opinions on Claimant's subjective complaints, but that Claimant lacks credibility in light of her inconsistent statements about alcohol use to Mr. Atkinson.  The ALJ further noted that Claimant's extreme allegations related to hallucinations and hearing voices were inconsistent with the remaining evidence of record.  In addition, the ALJ noted that the evidence from Claimant's treating physician, Dr. Norris, generally indicated that Claimant's condition improved with medication and that eventually, she was sleeping well and had no complaints of depression.  As the ALJ indicated in his decision, Dr. Norris' treatment notes generally reveal that Claimant's "psychological condition is essentially under good control and further indicate she is not credible."  (Tr. at 22.)

The ALJ further explained that he afforded great weight to the

14

State agency medical sources who opined that Claimant could perform light work, with some limitations. (Tr. at 22.) Regarding the opinion of Dr. Zelinka, who completed the physical form for the West Virginia Department of Health and Human Resources and opined that Claimant could not work full time due to bipolar disorder, the ALJ stated that he rejected this opinion, as there are no objective findings to support it. The ALJ reasoned that "[t]he opinion is inconsistent with the claimant's treatment records revealing her condition is under good control. Furthermore, the issue of disability is reserved to the Commissioner." (Tr. at 23.)

The ALJ stated that he afforded no weight to the opinion of the State agency source who completed a Mental Residual Functional Capacity Assessment (Tr. at 229-31), and partial weight to the source's opinion on the Psychiatric Review Technique form (Tr. at 234-45). (Tr. at 22.)

The court proposes that the presiding District Judge find that the ALJ properly weighed the medical evidence of record in keeping with the applicable regulation cited above. Claimant does not elaborate as to how the ALJ erred in weighing the above opinions, except to assert that the State agency sources did not have the benefit of evidence submitted after the administrative hearing. The evidence submitted after the administrative hearing from St. Joseph's includes the initial hospitalization that lead to Claimant's involuntary commitment at Chestnut Ridge. Evidence from

15

the involuntary commitment at Chestnut Ridge was in the record considered by the State agency sources.  (Tr. at 246.)  The other evidence submitted after the administrative hearing, from Belpre Medical Clinic and from Dr. Norris, do not indicate a worsening of Claimant's condition.  If anything, the evidence from Dr. Norris indicates that Claimant's mental condition was managed with medication.

Moreover, the ALJ was not obligated to call a medical expert to testify at the administrative hearing or to contact Claimant's treating sources.  The regulations provide that the decision to call a medical expert at the administrative hearing generally is within the ALJ's discretion: "[a]dministrative law judges may also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any listed impairment in appendix 1 to subpart P of part 404 of this chapter."  20 C.F.R. § 416.927(f)(2)(iii) (2006).  In addition, while an ALJ has a "responsibility to help develop the evidence," and "cannot rely on evidence submitted by the claimant when that evidence is inadequate," Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986), the record before the ALJ contained adequate evidence with respect to Claimant's mental and physical impairments, and the ALJ did not err in failing to exercise his discretion to call a medical expert or contact any of Claimant's treating or examining sources.

16

Finally, Claimant argues that the ALJ erred in his pain and credibility analysis. Claimant asserts that the ALJ erred in his consideration of Claimant's daily activities. Claimant asserts that she is consistent in her reporting that she suffers from irritability and depression, is unable to finish tasks because of her pain and is unable to tolerate changes in routine or handle stress. Claimant also argues that the ALJ wrongfully discredited Claimant's subjective complaints based on her inability to pay for extensive treatment. (Pl.'s Br. at 13.)

The court proposes that the presiding District Judge find that the ALJ's pain and credibility analysis is in keeping with 20 C.F.R. § 416.929(b) (2006) and Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (July 2, 1996) and is supported by substantial evidence. In his decision, the ALJ determined that Claimant had shown medically determinable impairments that could reasonably be expected to cause the pain alleged. He proceeded to the second step in the pain analysis, and his decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain and other symptoms, precipitating and aggravating factors, Claimant's medication and side effects and treatment other than medication. (Tr. at 27, 28-29.)

The ALJ noted Claimant's subjective complaints, including that she has no energy due to her thyroid condition, that she has asthma

and cannot be in the heat, that she is depressed all the time, can only walk one to two blocks and then must rest, can stand for two hours and sit only thirty minutes and that she does not lift anything. (Tr. at 20.) The ALJ noted that Claimant experiences side effects from her medication. (Tr. at 22.)

The ALJ determined that Claimant was not entirely credible, and provided a number of reasons for this finding. The ALJ relied on the fact that Claimant's medical treatment had been conservative. Claimant had not been hospitalized or even visited an emergency room for her physical complaints. While Claimant complained of significant mental limitations, the ALJ noted that since Claimant's hospitalization in 2004, her "mental health treatment has been conservative." (Tr. at 20.) The ALJ reasoned that Claimant was not honest with Mr. Atkinson concerning her substance abuse. Claimant reported to Mr. Atkinson in October of 2005, that her last use of marijuana was about three years ago, but during her hospitalization in August 2004, she reported smoking marijuana a few times a week. In addition, the hospital records from August 2004, indicate Claimant tested positive for marijuana. In addition, Claimant denied to Mr. Atkinson that she had ever been treated for alcohol or drug abuse, yet Claimant was treated in August of 2004. (Tr. at 21.) Claimant told Mr. Atkinson that she heard voices and had hallucinations, but testified at the administrative hearing that she had not experienced hallucinations

18

or heard voices since 2004.  The ALJ concluded that while it would seem from Claimant's testimony that "her treatment is a failure given her allegations of extreme physical and mental symptoms and limitations ... the claimant is not credible. [G]iven the conservative care and good results from detoxification in that the claimant has no hospital visits since August 2004 and Dr. Norris's comments, her treatment appears effective."  (Tr. at 22.)

Regarding Claimant's complaints of medication side effects, the ALJ reasoned that

> treatment records do not indicate that she has any side effects from medications that would interfere with her ability to perform the jobs identified by the vocational expert.  In fact, the claimant's treatment records reveal that her condition is under good control and do not mention any complaints of side effects (Exhibit 12F).

(Tr. at 22.)

Finally, the ALJ found that Claimant "greatly minimizes her activities of daily living.  However, there is no basis in the record for such extreme limitations.  If the claimant is this restricted, it is due to a lifestyle choice and not the result of her impairments."  (Tr. at 22.)

The ALJ's pain and credibility findings are supported by substantial evidence.  The ALJ did not "summarily" conclude that Claimant's subjective complaints were not credible.  He provided a well reasoned and thoughtful analysis as to why Claimant's subjective complaints were not entirely credible.  The ALJ's findings were made in the context of the factors identified in the

19

regulations and SSR 96-7p, and are supported by substantial evidence. The ALJ did not ignore Claimant's daily activities. He found Claimant's testimony in this regard not credible, and fully explained his reasons for such a finding. Finally, the court finds no indication that the ALJ somehow penalized Claimant based on her inability to pay for extensive treatment, as Claimant suggests.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a

waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Chief Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

May 5, 2008
Date

Mary E. Stanley
United States Magistrate Judge

21